UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| MICHAEL PESI, ET AL., | * | |
| Plaintiffs | * | |
| v. | * | Case No. 8:24-cv-00600-AAQ |
| OUR LADY OF THE WOODS CORP., | * | |
| Defendant. | * | |

## MEMORANDUM OPINION AND ORDER

This is a case concerning a school's failure to admit two students. Plaintiffs Michael Pesi and Aletta Muzila Pesi allege that Defendant The Woods Academy failed to admit their children on account of their mixed race in violation of 42 U.S.C. § 1981. Pending before the Court are two separate discovery disputes. First, Defendant seeks to compel an audio recording that Plaintiffs allegedly possess. ECF No. 38. Plaintiffs refuse to produce the recording, asserting their Fifth Amendment rights against self-incrimination. ECF No. 45. Second, the Court previously ordered that Defendant provide private information regarding two other students to Plaintiffs under certain limited conditions. ECF No. 52, at 1. Pursuant to the Order, Defendant provided the parents of the students whose information would be released notice of the Court's Order and the opportunity to object. *Id.* Both sets of parents have since objected, asking the Court to limit access to the information.[1] ECF Nos. 63, 68. For the reasons discussed below, Defendant's Motion to Compel,

---

[1] One of the sets of parents has termed their request as a "Motion for Further Protective Order Regarding Minor's Information." ECF No. 63. For the reasons discussed herein, the Motion is granted, in part, and denied, in part.

1

will be granted, in part, and denied, in part. Additionally, the Court shall Order additional limitations regarding access to the confidential student records.

## BACKGROUND

According to Plaintiffs' Amended Complaint, on or about February 12, 2023, Plaintiffs applied to The Woods Academy, seeking admission for two of their children, who are of mixed race.[2] ECF No. 13, at 1. The Woods Academy offers classes to students as young as three and through eighth grade. *Id.* at 2. According to Plaintiffs, the school is "known for its academic excellence, Catholic values, sacramental preparation, athletic offerings, and its record of placing 100% [of] its graduates at first choice high schools." *Id.* Plaintiffs believed their children would be ideal applicants given their strong academic and athletic backgrounds. *Id.* at 2-3. However, while Defendant initially appeared eager for Plaintiffs' children to apply, it placed the children on the waitlist after the family visited the school. *Id.* at 3.

Meanwhile, Defendant encouraged other White students to apply, admitting some of them after placing Plaintiffs' children on the waitlist. *Id.* Allegedly, the Academy admitted a White student, who had attended the same elementary school as one of Plaintiffs' children and had lower grades. *Id.* Particularly relevant to the present dispute:

> [o]n one occasion during the Spring of 2023, a white friend of Mr. and Mrs. Pesi made inquiry to Woods as to whether spaces were still available for the 2023-2024 school year and was told by Woods that spaces were still available. Upon learning this on or about April 26th, 2023, Mr. and Mrs. Pesi drove immediately to Woods in an effort to make a tuition deposit payment for the 2023-2024 school year. However, when they arrived at Woods, they were told that there were no spaces available, and Woods denied having given any information to any family regarding available spaces.

---

[2] Plaintiffs allege that Michael Pesi is White and Aletta Muzila Pesi is of African origin. ECF No. 13, at 3.

2

*Id.* at 4.

At the end of the Spring, Plaintiffs' children remained on the Woods Academy's waitlist. *Id.* As a result, over the course of the next year, they separately applied and were accepted at another school. *Id.* at 4-5. Although the second school is of comparable quality, Plaintiffs allege that it costs approximately $25,000 per year per child more. *Id.* at 4. Plaintiffs additionally allege that both of them, and their children, have experienced severe emotional distress as a result of the discrimination Defendant inflicted on them. *Id.*

On February 27, 2024, Plaintiffs filed suit in this Court, including in their Complaint one count alleging that the Woods Academy discriminated against their children in violation of 42 U.S.C. § 1981. ECF No. 1. On April 5, 2024, Plaintiffs filed an Amended Complaint, which Defendant answered on April 26, 2024. ECF Nos. 13, 17. On November 20, 2024, the Court approved a Joint Proposed Protective Order governing the confidentiality of certain discovery provided in the case. ECF Nos. 25, 26.

On July 17, 2025, Defendant informed the Court of a discovery dispute between the parties using the Court's expedited discovery dispute procedure. ECF No. 38. According to Defendant's letter, "[i]n response to several requests for production of documents seeking communications or statements concerning the allegations in the Pesis' complaint, Mr. Pesi objected and asserted that the 'Fifth Amendment Privilege' excuses his obligation to produce responsive documents." *Id.* Additionally, Plaintiffs served a privilege log identifying a "[t]elephone [c]all between Molly McNamara and Nicole Davis" as being withheld pursuant to the privilege. *Id.* According to Plaintiffs' other discovery responses, Ms. Davis spoke with Ms. McNamara, an employee of the school, about admissions opportunities for her children. ECF No. 46, at 1-2. In response, Ms. McNamara informed her that "there was no current waitlist" and encouraged Ms. Davis' children

3

to apply. *Id.* at 1. While Plaintiffs refused to produce the recording at issue, they separately produced "two sets of detailed but unsigned handwritten notes: one titled '4/26/23 @ 240 pm Conversation w/ Woods Academy ~ talked to Molly McNamara' and the other titled 'Questions for Woods Academy' and referencing '4/26 @240 pm spoke w/ Molly McNamara.'" *Id.* at 2. According to Defendant, the notes "summarize numerous questions and answers about The Woods Academy's admissions procedures and openings for the 2023-2024 academic year." *Id.* Plaintiffs responded generally that "the circumstances of the making of this audio recording may trigger criminal liability for the Plaintiffs and the compelled production of the audio recording is clearly testimonial as such production will arguably constitute an admission as to both the existence and authenticity of the recording." ECF No. 45, at 2.

Pursuant to the Court's Expedited Discovery Dispute Process, the Court entered an Order the same day directing the parties to provide their respective letter briefs addressing the issue on or before July 22, 2025. ECF No. 40. Each party complied with the Court's Order in a timely manner. ECF Nos. 45, 46.

On August 19, 2025, the Court held a discovery conference to address the parties' dispute over the requested recording, as well as multiple other discovery and scheduling matters. ECF No. 51. During the conference, the Court requested supplemental briefing addressing whether use of the disputed recording would violate state law. ECF No. 52, at 1. Additionally, the Court ordered Defendant to

> produce comparator information for the relevant students with the names and addresses of the students and their parents redacted. The documents shall be subject to a Confidentiality Order and notice shall be provided to the parents of the subject students. Plaintiffs' counsel may share and discuss the information with Plaintiffs during any meeting, but shall not leave the information or copies thereof with Plaintiffs[.]"

4

*Id.*

On August 25, 2025, the parties additionally requested that before the records be provided, the following process be followed:

> The Woods Academy intends to provide notification to the parents of the subject students no later than September 5, 2025. The written notice will advise the relevant parents of the agreed upon safeguards that will be put in place to protect the confidentiality of the student records at issue but that, if they wish to seek further protective action from the Court, they may do so by submitting a letter to the Court (delivered to the Clerk's office and directed to Your Honor's attention) no later than September 19, 2025, describing their objection and the basis for it. If there are no parent objections requiring action from the Court, The Woods Academy will produce the records to Plaintiffs' counsel on September 24, 2025. If any parent objections are submitted, The Woods Academy will await direction from the Court before producing any records.

ECF No. 55, at 1. *See also* ECF No. 56 (approving proposed process).

On August 25, 2025, Plaintiffs provided supplemental briefing, reiterating their position that any use of the recording would violate Maryland's Wiretap Act, Md. Code, Cts. & Jud. Proc. 10-402(a)(3), unless the Court made a finding that the parties to the conversation did not have a reasonable expectation of privacy in it. ECF No. 57. Plaintiffs made their request largely in response to Defendant's suggestion during the conference on the dispute that its employee may be willing to concede ex-post facto that she consented to the conversation's recording. ECF No. 57, at 2. In its filing, provided the following day, Defendant reiterated its position that the Court should order Plaintiffs to produce the recording. ECF No. 58. However, if the Court failed to order the recording's production, the Court should instruct the jury to draw an adverse inference against Plaintiffs on account of their failure to produce the recording. *Id.* at 3. Alternatively, Defendant proposed that if it can not hear the recording, the Court should prohibit Plaintiffs from presenting any evidence derived from it. *See id.* at 3 ("Alternatively, or in addition, the Court should preclude

[Plaintiffs] from admitting any evidence of the April 26, 2023 conversation that is referenced in [Plaintiffs'] privilege log and in the handwritten notes produced by [Plaintiffs].").

On September 4, 2025, the Court requested that, within fourteen days, Plaintiffs provide their position on Defendant's alternative solution, that the Court bar Plaintiffs from relying on the recording in dispute, as well as Plaintiffs' notes which, presumably, were based on Plaintiffs having listened to the recording or which Plaintiffs took while the recording was occurring. ECF No. 59. While Plaintiffs provided a timely response, they failed to address the Court's Order. ECF No. 60. Rather, Plaintiffs reiterated their position that Plaintiffs were entitled to withhold the recording on account of the Fifth Amendment and an adverse inference would be inappropriate. *Id.* On September 18, 2025, Defendant requested leave to respond to Plaintiffs' last supplemental filing, ECF No. 61, which the Court granted Defendant to do on or before September 24, 2025. ECF No. 62. In that filing, and in contrast with its previous filing, Defendant suggested that if the Court failed to order production of the recording, it should reserve ruling on the appropriate remedy until after discovery closed. ECF No. 64, at 4.

While the parties were providing their positions regarding the proper status of the disputed recording, the parents of the two children whom Plaintiffs had identified as comparators also expressed concern regarding the parties' plans to release confidential information from their children's student records. The first parents requested that the Court: 1) prohibit the disclosure of any personally identifying information of their child in any public filing or court record without prior approval of the Court; 2) require that all documents containing such information be filed under seal or with sufficient redactions to protect the minor's identity; and 3) bar any party from disseminating information in the records in any digital or online platform. ECF No. 63. As Plaintiffs highlighted in response, these requests, for the most part, correspond with the limitations

in the Confidentiality Order pursuant to which Defendant would produce the documents. ECF No. 65. The second set of parents, however, requested additional relief. Specifically, they requested that given the close relationship between their family and the Pesis, they requested that the Court, at a minimum, prohibit the Pesis from personally accessing their child's records. ECF No. 68, at 1-2. The parents noted that even if any personally identifying information were redacted, given the close relationship between the families, Plaintiffs would easily be able to determine the identity of the child. *Id.* at 1. The parents acknowledged that Plaintiffs would be under a court order not to disclose the information, but, nonetheless, believed that the information should not be disclosed because it could have no possible relevance to the case. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(a) "authorizes the basic motion for enforcing discovery obligations." 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2285 (3d ed. 1998). Where a party fails to answer a request for production of documents or an interrogatory, the Rule allows the opposing party to move for an order compelling an answer. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). The moving party must certify in the motion that it has conferred, or attempted to confer, in good faith with opposing counsel in an effort to obtain the desired material without court involvement. Fed. R. Civ. P. 37(a)(1). District courts enjoy substantial discretion in managing discovery, including granting or denying motions to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

## ANALYSIS

Pending before the Court are two separate issues: 1) whether Plaintiffs may invoke the Fifth Amendment to the U.S. Constitution to refuse disclosure of the disputed recording; and 2)

7

whether the parents' objections to disclosure of their children's private records provides a basis to further limit disclosure of the records.

Both issues can be readily addressed for the time being, while ensuring that, if necessary, the parties can seek further relief from the Court. Although the Fifth Amendment shields the recording and Plaintiffs' notes based on the recording from disclosure, the parties may nonetheless conduct other discovery related to the contents of the conversation. Likewise, given the legitimate concerns raised by the parents of one of the third-party children whose records Plaintiffs seek, the Court shall limit access to such records for the time being to Plaintiffs' counsel and expert(s). However, once Plaintiffs' counsel and expert(s) have received and reviewed the records in question, they may return to the Court, seeking leave to allow Plaintiffs access to the records, upon demonstration of a specific need.

**I.      The Fifth Amendment Protects Plaintiffs' from Disclosing the Recording.**

The Fifth Amendment generally protects an individual from incrimination through one's own compelled testimony. *See Fisher v. U.S.*, 425 U.S. 391, 397 (1976) ("The taxpayer's privilege under this Amendment is not violated by enforcement of the summonses involved in these cases because enforcement against a taxpayer's lawyer would not 'compel' the taxpayer to do anything and certainly would not compel him to be a 'witness' against himself."). "A witness may claim his Fifth Amendment privilege any time he 'is . . . subject to a realistic risk of incrimination on . . . charges, or if the desired testimony about the transaction in question would give rise to a risk of incrimination in connection with other transactions.'" *Krape v. PDK Labs, Inc.*, No. CV 02–3440(DRH)(ETB), 2004 WL 831137, at *6 (E.D.N.Y. Apr. 19, 2004) (*quoting United States v. Rodriguez*, 706 F.2d 31, 36–37 (2d Cir.1983)). "[A] defendant's Fifth Amendment privilege

carries equal weight in both . . . criminal and civil actions." *Thomas v. Tyler*, 841 F.Supp. 1119, 1124 (D. Kan. 1993).

The Amendment's protections extend to "the production of certain documentary evidence . . . if there is an element of personal compulsion present in obtaining a testimonial communication from the accused." *U.S. v. Cates*, 686 F. Supp. 1185, 1190 (D. Md. 1988); *see also U.S. v. Hubbell*, 530 U.S. 27, 36 (2000) ("we have also made it clear that the act of producing documents in response to a subpoena may have a compelled testimonial aspect."); *U.S. v. Sweets*, 526 F.3d 122, 127 (4th Cir. 2007) ("A 'testimonial communication' is usually a verbal or written statement, but it may also include an act."); *U.S. v. Wujkowski*, 929 F.2d 981, 983 (4th Cir. 1991) ("It is well settled that an individual may claim that his act of producing his own materials implicates his Fifth Amendment rights."). "By 'producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.'" *Hubbell*, 530 U.S. at 37 (quoting *Doe v. U.S.*, 487 U.S. 201, 208 (1988)). That said, "[w]e cannot cut the Fifth Amendment completely loose from the moorings of its language, and make it serve as a general protector of privacy. . . . We adhere to the view that the Fifth Amendment protects against 'compelled self-incrimination, not [the disclosure of] private information.'" *Fisher*, 425 U.S. at 401, quoting *United States v. Nobles*, 422 U.S. 225, 233 n.7 (1975).

Whether a party asked to produce documents may invoke the Fifth Amendment turns on whether the production would be "testimonial" and "incriminating." *Fisher*, 425 U.S. at 410. To be sufficiently testimonial, there must be an element of "personal compulsion present in obtaining a testimonial communication from the accused." *Cates*, 686 F.Supp. at 1190. *See also U.S. v. Darwin Constr. Co., Inc.*, 818 F.2d 30, 1987 WL 36058, at *1 (4th Cir. Apr. 24, 1987) ("Whereas the validity of a subpoena or summons once turned on the contents of the documents that it sought,

*Fisher* and *Doe* made validity turn on the testimonial and incriminating nature of the act of producing the documents."). "This now familiar inquiry centers on whether producing the items would testify to their authenticity, existence, or possession by the defendant." *Wujkowski*, 929 F.2d at 985. "These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." *Fisher*, 425 U.S. at 410. Nonetheless, the Supreme Court's, the Fourth Circuit's, and this Court's previous decisions provide guidance. For example, an individual asked to produce documents on behalf of a corporation, even if the documents incriminate the individual, may not invoke the Amendment, because when producing the documents, he is not speaking for himself, but rather for the corporation which he represents. *See United States v. White*, 322 U.S. 694, 699 (1944) ("[T]he official records and documents of the organization that are held by [its officers] in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally."). Likewise, an individual asked to produce documents that he did not create and are of a type commonly known to exist may not invoke the privilege, because the act of producing the documents would not add to a prosecuting body's knowledge regarding the individual's criminal liability. *See Fisher*, 425 U.S. at 397 (responding to a summons directed toward taxpayers' attorneys for documents the taxpayers' accountants prepared and transferred to the attorneys in connection with an IRS investigation did not violate taxpayers' Fifth Amendment rights); *Sweets*, 526 F.3d at 128 ("While knowing Long's location when the police were looking for him might theoretically admit to more, in the context of this case, Sweets' knowledge of Long's location added nothing to the store of knowledge that the police had as to Sweets' role in any criminal offense."); *U.S. v. Fishman*, 726 F.2d 125, 127 (4th Cir. 1983) ("Being business records of Dr.

Fishman, their existence in the circumstances of this particular case . . . are self-evident truths, and hardly need to be proven through resort by the Government to the act by the owner in turning them over. Insofar as authentication is concerned to the extent the documents have been prepared by others . . . , those other persons can supply authentication, without recourse to the act of Dr. Fishman"); *U.S. v. Stone*, 976 F.2d 909, 911-12 (4th Cir. 1982) (rejecting assertion of privilege over homeowner's utility bills because "[a]s the owner of the house, it is a foregone conclusion that he would have the utility bills and rental records for the house" and "the beach house documents could easily be obtained from the utilities involved" (internal quotation marks omitted)); *Wujkowski*, 929 F.2d at 985 ("The Department, of course, could attempt to rebut appellant's claim by 'producing evidence that possession, existence, and authentication were a "foregone conclusion."'"); *Sec. and Exch. Comm'n v. N. Star Fin., LLC*, No.: GJH–15–1339, 2017 WL 4539296, at *4 (D. Md. Oct. 10, 2017) ("In Martin's own Motion for Reconsideration, he describes the account as 'Martin's Yahoo email account.' . . . Furthermore, Martin has used this same account numerous times in email communications with the Court. As Martin does not contest that the capitalsourcelending@yahoo.com is his account, his signing of the Consent Email is not testimonial."); *but see Hubbell*, 530 U.S. at 45 (holding the production had a testimonial aspect where "the Government has not shown that it had any prior knowledge of either the existence or the whereabouts of the 13,120 pages of documents ultimately produced by respondent.").

The witness bears the burden of establishing that production of a document would constitute testimonial self-incrimination, but that burden may be met by showing that "production of the records 'would tacitly admit their existence and his possession' and that his production of the records 'would relieve the Government of the need for authentication' if the Government were able to obtain the documents from another source." *In re Grand Jury Investigation, Special Grand*

*Jury No. II, Sept. Term, 1983*, 600 F.Supp. 436, 438 (D. Md. 1984). "Blanket, unsubstantiated invocations of the Fifth Amendment are not a free pass to escape civil discovery." *Banco Mercantil De Norte, S.A. v. Páramo*, No. 4:23-MC-01188, 2025 WL 871622, at *4 (S.D. Tex. Mar. 19, 2025). "The Court may address any Fifth Amendment issues with a scalpel rather than simply amputate the [requesting party's] right to proceed with the litigation in a timely manner." *Anders v. Cosby*, No. 3:08-0664, 2008 WL 11510599, at *2 (M.D. Tenn. Nov. 10, 2008).

Plaintiffs have appropriately invoked the Fifth Amendment as a shield against the recording's production. At the most basic level, their production of the recording would confirm its existence. Further, were Plaintiffs to produce the recording, they would confirm that they possessed a recording of a conversation which they were not party to, thus providing evidence that they may have violated Md. Code Ann., Cts. & Jud. Proc. § 10-402 (a), which prohibits a party from intercepting a conversation, or using or disclosing an intercepted conversation. *See* ECF No. 58, at 1. Finally, by producing the recording in response to a request for documents and/or communications concerning allegations in Plaintiffs' Complaint – including Plaintiffs' assertion that one of Defendant's employees stated to a White applicant that seats remained available after placing Plaintiffs' children on a waitlist – Plaintiffs would confirm the authenticity of the recording.

That the Court, as well as any government entity that seeks to prosecute Plaintiffs in the future, may have some information regarding the recording, does not strip any potential production of its testimonial nature. An otherwise incriminating production may lose its testimonial character only if the information its production would communicate would add "little or nothing to the sum total of the Government's information"; i.e., the authenticity, possession and incriminating nature of the production must be a "foregone conclusion". *Stone*, 976 F.2d at 911-12; *Fishman*, 726 F.2d

at 126-27 (ordering the production of documents, the existence and possession of which are "self-evident truths"). Plaintiffs have made their case more difficult by producing a privilege log which reveals significant information regarding the recording.[3] Although the Court may reasonably conclude that Plaintiffs have possession, custody, or control of a "telephone call" between one of Defendant's employees and another parent, the information currently available does not meet the high standard the Fourth Circuit has established to strip an otherwise incriminating production of its testimonial nature. Even if the Court were to set aside that production would eliminate any remaining doubt as to the recording's existence and Plaintiffs' possession of it, Plaintiffs' production of the recording would confirm its authenticity. In this regard, this case is distinguishable from cases in which this Court and the Fourth Circuit have found otherwise incriminating productions not to be testimonial. Unlike the tax records in *Fisher* or the business records in *Fishman*, there is no allegation that a third party created the recording, or that the government could obtain the recording by directing a subpoena to a third party. Accordingly, Plaintiffs' production of the recording would authenticate the recording in a way that production of the records would not have in cases in which courts have ordered production. *See Fisher*, 425 U.S. at 414 ("Whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded here are not his "private papers[.]"); *Cates*, 686 F.Supp. at 1193 (holding that while third party tax returns would not be protected, the privilege protects a taxpayer from producing W-2 forms and deposit

---

[3] The best course of action may have been for Plaintiffs to provide a privilege log, stating that they possessed a communication, but were refusing to produce it because of the Fifth Amendment. To the extent that Defendant found such a description to be insufficient, they should have met and conferred in accordance with this Court's Local Rules. *See* L.R. 104.7 (D. Md. 2025). If the parties were unable to reach agreement, Plaintiffs then could have sought a protective order from the Court, after which the matter may have been discussed in closed proceedings.

slips because by producing such documents he would be "acknowledging the existence and possession of such information from which he should have determined his tax liability."). Defendant's arguments to the contrary acknowledge the assumptions the Court would have to rely on to find in its favor. *See* ECF No. 46, at 2 (arguing that "presumably" a voicemail that Plaintiffs left Defendant regarding their possession of "video recordings and phone recordings" referred to the recording presently at issue); *id.* at 2-3 ("Mr. Pesi surely would not misrepresent having made the recordings").[4] The necessity of drawing such assumptions evidences that the authenticity of the recording is less than a foregone conclusion.

To ensure that the Court's decision shall not unfairly prejudice Defendant who has not had the opportunity to listen to any recording in Plaintiffs' possession, the Court shall additionally prohibit Plaintiffs from introducing or relying on any evidence that may have been acquired as a result of listening to the recording or participating in the original call. This shall include Plaintiffs' notes of the conversation, as well as any testimony from Plaintiffs regarding the recording. Although neither party may rely on the recording or the notes, they may depose Ms. McNamara or Ms. Davis regarding the conversation. During any such deposition or subsequent examination at trial, neither party may introduce or rely on the recording or notes. Likewise, neither Plaintiff may offer testimony regarding the conversation as the parties do not dispute that they were not party to the conversation between Ms. Davis and Ms. McNamara. The comprehensive exclusion of the recording, and any information that may have been acquired as a result of the recording adequately addresses Defendant's concerns of unfair prejudice. Although, in its most recent filing,

---

[4] Defendant's argument may also suffer from the limitation that it overstates Plaintiffs' representation in the referenced voicemail to Defendant. Although Defendant first states in its letter that Mr. Pesi represented in a voicemail that he possessed recordings, ECF No. 46, at 2, when arguing that authenticity is no longer at issue, Defendant argues that Mr. Pesi additionally conceded that he made the recording, *id.* at 2-3.

Defendant asks the Court to refrain from determining the appropriate remedy required to remediate any prejudice from the privilege's assertion, holding off from determining the appropriate remedy would create additional problems. Were the parties to rely on the recording and/or notes in discovery, the Court's subsequent determination that any evidence based on the recording should not have been relied on would come only after the parties had spent significant resources. Accordingly, Defendant's original proposal to exclude the recording, as well as any evidence based on it, is the better course of action. However, to the extent that Defendant believes that further relief is necessary, it may re-raise the issue in advance of trial.

### II.   Third-Party Student Records Shall Be Provided to Plaintiffs' Counsel and Experts.

Since the Court issued its initial Order governing the release of information regarding two third-party children, both of their sets of parents have asked the Court for further relief. The Court shall take additional action, as they have requested.

The parents of the first child request relief largely consistent with the Order. The request will be denied to the extent that it prohibits Plaintiffs' and Defendant's counsel from sharing the records between themselves and with their experts via electronic mail. However, to address the parents' legitimate concerns regarding inadvertent disclosure, the parties shall, when transmitting the records electronically, protect them with a separately provided password. This shall ensure that if the records are inadvertently emailed to an unintended recipient, the recipient shall not be able to access the records.

The parents of the second child have requested that, if the information is released, it not be provided to Plaintiffs given their family's regular interaction with Plaintiffs' family. Plaintiffs and Defendant have received notice of this request and neither have objected. *See* ECF No. 68. Balancing the legitimate privacy concerns of the second child's parents and Plaintiffs' need for the

information to proceed with the litigation, limiting access to such records to only Plaintiffs' counsel and their experts is appropriate. Plaintiffs have not demonstrated, at this time, how their case would be prejudiced if they did not have access to the children's records. However, once the records have been received and Plaintiffs' counsel and expert have reviewed the records, Plaintiffs may return to the Court to seek access to such documents. If they do, they must demonstrate how the present limitation prejudices the advancement of their case.[5]

## CONCLUSION

For the reasons stated above, Defendant's Motion to Compel, ECF No. 38, is granted, in part, and denied, in part. Likewise, the Third-Party Motion for Further Protective Order Regarding Minor's Information, ECF No. 63, is granted, in part, and denied, in part.

So ordered.

Date: November 11, 2025

                                                                                     /s/
                                                              Ajmel A. Quereshi
                                                              U.S. Magistrate Judge

---

[5] For example, to the extent that Plaintiffs believe themselves to be experts regarding the subject matter of the case, they would have to explain why their expert's access to this information is insufficient.